IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:22-cv-00178-MR

| | |
|---|---|
| JOHN N. LOWERY, | ) |
| Plaintiff, | ) |
| vs. | ) **MEMORANDUM OF DECISION AND ORDER** |
| MICHAEL SHOOK, et al., | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment filed by Defendants Shook, Miller, Cook, and McGrady. [Doc. 61].

## I. PROCEDURAL BACKGROUND

On December 1, 2022, Pro Se Plaintiff ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 alleging the violation of his civil rights while incarcerated at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina, by Defendants Michael Shook, Brent Snuffer, Jeffrey B. Miller, Jordan A. Cook, and Joshua McGrady, all identified as Correctional Officers at Alexander. [Doc. 1]. Plaintiff asserted claims under the Eighth Amendment and for assault and battery based on Defendants' alleged use of excessive force on Plaintiff. [Id.]. Plaintiff's unverified

Complaint survived initial review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. [Doc. 10].

Defendants Shook, Miller, Cook, and McGrady answered Plaintiff's Complaint. [Docs. 32, 35, 38, 46]. Defendant Snuffer, however, failed to answer Plaintiff's Complaint or appear in this action. Plaintiff simultaneously moved for entry of default and default judgment against Defendant Snuffer. [Docs. 41, 42]. The Court granted Plaintiff's motion for entry of default, but denied Plaintiff's motion for default judgment, advising him that it was premature and that he may move for default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure at the appropriate time. [Doc. 44]. Plaintiff has not so moved, and Defendant Snuffer has not moved to set aside the entry of default or otherwise appeared in this matter.

On September 18, 2023, the Court entered its Pretrial Order and Case Management Plan, which set the discovery deadline as January 16, 2024. [Doc. 49]. On Defendants' motion, the Court extended the discovery deadline to March 15, 2024, so that Defendants could depose the Plaintiff after he was released from custody in January of 2024. [Doc. 53; 12/29/2024 Text Order]. On March 4, 2024, over two months after his release, Plaintiff notified the Court of his new address in Augusta, Georgia. [Doc. 54]. In the meantime, because of Plaintiff's failure to timely notify the Court of his new

2

address, Defendants' written discovery to and notice of deposition on Plaintiff had been returned to them undelivered. [Doc. 55]. Defendants, therefore, were forced to cancel Plaintiff's scheduled deposition and needed additional time to serve the returned discovery and reschedule Plaintiff's deposition. [Id.]. The Court, therefore, extended the discovery deadline to May 17, 2024. [3/5/2024 Text Order]. Defendants immediately served the written discovery on Plaintiff at his new Georgia address, and his response was due by April 8, 2024. [Doc. 56 at 2]. Plaintiff failed to respond. On April 16, 2024, Defendants sent Plaintiff a letter regarding the missing discovery responses and sought Plaintiff's availability for his deposition. [Doc. 56-3]. On May 2, 2024, after having received no response to their letter or their written discovery request, Defendants moved the Court dismiss Plaintiff's Complaint as a sanction, or, alternatively, to order Plaintiff to respond to Defendants' requests and that Defendants' 26 requests for admissions be deemed admitted. [Doc. 56]. Although Plaintiff failed to respond to Defendants' motion, he did improperly file his belated responses to Defendants' discovery requests. [Doc. 57]. While "certainly troubled by Plaintiff's failure to timely respond to Defendants' discovery requests and general disregard for the Orders of this Court and rules of procedure," the Court deemed Plaintiff's discovery responses timely, denied Defendants' motion for sanctions, and

3

allowed Defendants another thirty (30) days to depose the Plaintiff. [Doc. 60 at 7]. In so doing, the Court noted Plaintiff's pro se status, his recent release from a 20-year term of incarceration, and the fact that he had never actually received the deposition notice, which of course was caused by his own failure to update his address with the Court. [Id.]. The Court admonished Plaintiff, however, that:

> his failure appear for his deposition or to otherwise comply with this Court's Orders, the Local Rules, or Rules of Civil Procedure may result in the imposition of sanctions. **Sanctions can include Plaintiff being required to pay Defendants' costs, including reasonable attorney's fees, and <u>may also include dismissal of this lawsuit with prejudice</u>**.

[Id. at 8 (emphasis in original)]. Defendants were thereafter able to take Plaintiff's deposition on June 7, 2024. [Doc. 61-2].

On August 2, 2024, Defendants Shook, Miller, Cook, and McGrady moved for summary judgment. [Doc. 61]. Defendants argue that summary judgment should be granted because the Court should deem admitted those requests for admissions Plaintiff failed to timely answer, because Plaintiff cannot forecast any evidence that any Defendant inflicted even *de minimis* injury on him, and because Defendants are entitled to qualified immunity. [Doc. 61-1 at 7-10]. In support of their summary judgment motion, Defendants submitted a brief; their own declarations; Plaintiff's deposition

4

testimony in this matter; Plaintiff's extensive prison disciplinary records; and copies of the Complaint and Plaintiff's belated discovery responses. [Docs. 61-1 through 61-13].

On August 5, 2024, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 62]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))].

Plaintiff did not file a response to Defendants' summary judgment motion and the deadline to do so has expired. Also, as noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for its evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"). As such, Plaintiff's only forecast of evidence before the Court is his deposition testimony, which was offered by Defendants.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

7

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

## III. FACTUAL BACKGROUND

The forecast of evidence, taken in the light most favorable to the Plaintiff as the non-moving party shows the following.

In or around 2002, Plaintiff was incarcerated on a conviction for second-degree rape. [Doc. 61-2 at 13, 17: Plaintiff's Dep.]. He was released from incarceration in January 2024. [Doc. 61-2 at 13]. During his incarceration, Plaintiff was convicted of over 250 infractions. He was housed at nearly every close custody correctional facility in the State of North Carolina. [Doc. 61-2 at 33-34, 39-40, 58-59]. At one time, he spent ten straight years in segregated housing. [Id. at 34].

Plaintiff testified in his deposition that on March 24, 2020, he was at intake at Alexander on his transfer there. [Id. at 59]. During a dispute with officers regarding the number of books and amount of personal property Plaintiff was allowed in his cell, an officer threatened to throw Plaintiff's

8

religious materials in the trash. While Plaintiff's property was inventoried, he was placed in a holding cage and handcuffed with a waist chain attached. Plaintiff complained that the waist chain was too tight. An officer "started choking [Plaintiff] out" and another officer tried to mace him. These officers are not identified, but are not among the Defendants named. [Id. at 59-61, 66-71]. Plaintiff was thrown to the grown. Plaintiff was taken to the shower to decontaminate, which he did fully dressed. [Id. at 61]. Several officers then arrived to retrieve Plaintiff from the shower.[1] Defendant Shook "was the lead" of this group. [Id.]. He came to the shower door, opened it, and put Plaintiff into full restraints, including handcuffs, a waist chain, and ankle chains. [Id.]. Plaintiff was then placed in a wheelchair and Defendant Shook and an officer Plaintiff "think[s]" was Defendant McGrady, along with other unnamed officers, took Plaintiff to his unit, where Plaintiff believed he would be allowed to change into dry clothes. [Id. at 77-78, 80-81]. The officers all walked behind the Plaintiff. [Id. at 79]. Upon entering the unit, Plaintiff stood up and was walked to the separate shower area in his unit. [Id.].

When Plaintiff and the group of officers arrived at the shower, "they" shoved Plaintiff in the shower and started "pounding" on him, pushing and

---

[1] At the time, Plaintiff did not know these officers' names, but later learned their identities from another inmate who witnessed the event. [Doc. 61-2 at 61, 76, 79].

punching him, and banging his head against the shower wall. [Id. at 80-81]. Plaintiff did not see which officers assaulted him, and as noted, was unable to identify the officers who escorted him to the shower.[2] [Id. at 83-86]. At the end of the assault, Plaintiff turned to look at the officers. At this time, Defendant Shook "palm[ed] Plaintiff in the back of [his] head, slam[med his] head in the wall one more time" and called Plaintiff a "ni***r." [Id. at 88; see id. at 89]. The entire interaction in the shower lasted approximately 15 to 20 seconds. [Id. at 87-91]. The only Defendant Plaintiff can identify as having assaulted him in the shower is Defendant Shook. Plaintiff does not know whether Defendants Cook, McGrady, Miller, or Snuffer assaulted him in the shower.[3] [Id. at 88, 96-97, 112-13; see id. at 114-16 (Plaintiff testifying that he has "no[ ]" such evidence)]. Plaintiff stumbled out of the shower bleeding from his lip and forehead. A nurse who had just entered the area asked Plaintiff if he needed medical attention. Plaintiff responded affirmatively and told the nurse he had just been assaulted. After the assault, Defendants

---

[2] Plaintiff offered inadmissible hearsay that he was told that the group included Defendants McGrady and Cook. Such hearsay, however, doesn't constitute a forecast of admissible evidence. The only person Plaintiff could identify as participating was Defendant Shook. [Id. at 87].

[3] In their Declarations, Defendants Shook, Miller, Cook, and McGrady attested that they did not shove or punch Plaintiff. [Doc. 61-7 at ¶¶ 4-5: Shook Dec.; Doc. 61-8 at ¶¶ 4-5: McGrady Dec.; Doc. 61-9 at ¶¶ 4-5: Cook Dec.; Doc. 61-10 at ¶¶ 4-5: Miller Dec.].

Shook, Miller, and McGrady left the area. Defendants Cook and Snuffer, who were holding Plaintiff up by both of his arms, stayed with the Plaintiff while he received medical care. [Id. at 91-92, 96].

## IV. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986).  To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind.  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official to make out an excessive force claim.  This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances."  Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard."  Id. (citing Whitley, 475 U.S. at 320).  "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials

11

applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

The forecast of evidence in the light most favorable to the Plaintiff fails to include anything from which a reasonable juror could conclude that Defendants McGrady, Cook, Miller, or Snuffer used excessive force on or otherwise assaulted the Plaintiff. In fact, Plaintiff admitted in his deposition that he has no such evidence and Defendants McGrady, Cook, and Miller testified that they did not assault him. As such, there would be no genuine issue for trial against these Defendants in any event. Moreover, because the forecast of evidence does not support that Defendants McGrady, Cook, or Miller, violated a constitutional right, these Defendant would also be protected by qualified immunity. See E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

Regarding Defendant Shook, Plaintiff's only forecast is that Shook pushed Plaintiff's head against the wall as part of an altercation and used a racial epithet. This scant forecast is insufficient to support any jury verdict as to either the objective prong or the subjective prong of the Eighth Amendment test. Therefore, Defendant Shook's Motion for Summary Judgment will be granted. As for Defendant Snuffer, Plaintiff obtained an entry of default, which served to cut off that Defendant's opportunity to

respond. Plaintiff, however, did nothing to follow up on the entry of default. Now, at the summary judgment stage, Plaintiff's forecast of evidence is devoid of anything tending to show any liability on the part of Defendant Snuffer. Therefore, Plaintiff's claim against Defendant Snuffer will likewise be dismissed.

Lastly, a plaintiff's failure to respond to a summary judgment motion may constitute waiver or abandonment of a claim. Estate of Edgerton v. UPI Holdings, Inc., No. CCB-09-1825, 2011 WL 6837560, at *4 (D. Md. Dec. 28, 2011) (citing Mentch v. Eastern Sav. Bank, FSB, 949 F.Supp. 1236, 1246-47 (D. Md. 1997)). The Court finds that the Plaintiff has abandoned his claims by failing to respond to Defendants' motion for summary judgment. Throughout this litigation, Plaintiff has exhibited a troubling failure to abide by the Court's Orders and governing rules of procedure. The Court expressly warned him that his further failure to so comply may result in the dismissal of this action with prejudice. Plaintiff only acted at all when repeatedly ordered, and then in only a partial fashion. The only thing that Plaintiff has done to pursue this matter is to sit for his deposition. He did so only after repeated prodding from this Court, and then testified that he had essentially no evidence to support his allegations—only suppositions, speculation, and hearsay. Despite this warning and the Court's leniency regarding Plaintiff's

13

earlier discovery failures, Plaintiff failed to respond to Defendants' summary judgment motion. On this record the Court finds that the Plaintiff has not acted in a manner as to prosecute this case and has waived any claim he may otherwise have had. The Court will grant summary judgment on this additional ground.

For the reasons stated herein, the Court will grant Defendants' motion for summary judgment and dismiss Defendant Snuffer as a Defendant in this matter.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 61] is **GRANTED**, and this action is hereby **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Defendant Snuffer is **DISMISSED** as a Defendant in this matter.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**. Signed: October 15, 2024

Martin Reidinger
Chief United States District Judge